UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IGNACIO FRANCO, | ) | NO. CV 17-5965-E |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations, Social Security, | ) | |
| Defendant. | ) | |

**PROCEEDINGS**

Plaintiff filed a complaint on August 10, 2017, seeking review of the Commissioner's denial of disability benefits. The parties filed a consent to proceed before a United States Magistrate Judge. Plaintiff filed a motion for summary judgment on April 6, 2018. Defendant filed a motion for summary judgment on June 6, 2018. The Court has taken the motions under submission without oral argument. See L.R. 7-15; Order, filed August 15, 2017.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff, a former electrician and foreman for an electrical contractor, asserted disability since September 27, 2009, based on alleged: osteoarthritis, diabetes, peripheral neuropathy, degenerative disc disease, muscle spasms, chronic pain, trouble sleeping, and hypertension (Administrative Record ("A.R.") 35-82, 149-88, 199-230, 246-802). Plaintiff claimed that his impairments cause him to suffer pain and limitations that prevent him from working (A.R. 56-64).

An Administrative Law Judge ("ALJ") reviewed the medical record and heard testimony from Plaintiff, a medical expert, and a vocational expert (A.R. 18-185, 187-245, 250-802). The ALJ found that Plaintiff suffers from severe degenerative disc disease, osteoarthritis, diabetes mellitus, and peripheral neuropathy, but retains the residual functional capacity to perform a limited range of medium work. (A.R. 22-27). The ALJ further found that, with such capacity, Plaintiff could perform medium work as a "laundry worker" or "sweeper/cleaner," and therefore is not disabled (A.R. 28-29) (adopting vocational expert testimony at A.R. 72-74). The Appeals Council denied review (A.R. 1-3).

In reaching his decision, the ALJ found Plaintiff's statements concerning the severity of Plaintiff's alleged symptoms not entirely credible (A.R. 23-27). Plaintiff contends that the ALJ's stated reasons for this finding are legally insufficient. See Plaintiff's Motion, pp. 1-10.

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner of Social Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

> If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. But the Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [administrative] conclusion.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

///
///
///
///

3

**DISCUSSION**

After consideration of the record as a whole, Defendant's motion is granted and Plaintiff's motion is denied. The Administration's findings are supported by substantial evidence and are free from material[1] legal error. Plaintiff's contrary argument is unavailing.

**I. Substantial Evidence Supports the Conclusion that Plaintiff Can Work.**

Substantial evidence supports the ALJ's conclusion that Plaintiff is not disabled. The medical expert reviewed the record and essentially opined that Plaintiff is capable of performing the limited range of medium work the ALJ assessed. The medical expert opined that Plaintiff can lift 50 pounds occasionally and 20 pounds frequently, stand six hours in an eight hour day with a sit/stand option to stretch two minutes out of every hour, occasionally kneel, crouch, and crawl, but must avoid ladders, ropes, and scaffolds (A.R. 47-49;

///
///
///
///
///
///

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Garcia v. Commissioner, 768 F.3d 925, 932-33 (9th Cir. 2014); McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

4

compare A.R. 23 (ALJ's residual functional capacity determination).[2]
The medical expert said that, based on Plaintiff's complaints,
Plaintiff could have some fingering or handling restrictions, but the
expert did not see any medical basis for any such restrictions (A.R.
50-51; see also A.R. 43 (expert noting that Plaintiff's sensory
functions were intact upon testing); A.R. 296, 561, 567 (treatment
notes indicating Plaintiff's upper extremity sensory functions were
"intact to light touch")).

   The state agency physician found Plaintiff capable of performing
medium work (A.R. 83-89). The record contains no other opinion
evidence concerning Plaintiff's abilities or limitations apart from
one notation from May of 2013 by Dr. Yanfeng Wang, who treated
Plaintiff briefly with physical therapy. When Plaintiff asked to talk
to Dr. Wang on the phone concerning Plaintiff's alleged disability,
Dr. Wang wrote, "[Plaintiff] has OA [osteoarthritis] affecting many
joints, we may need to discussed [sic] modified work restrictions
///
///
///

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." See 20 C.F.R. §§ 404.1567(c), 416.967(c). Although the medical expert opined Plaintiff could frequently lift 20 pounds (not 25 pounds), this discrepancy is not material to the ALJ's ultimate determination that Plaintiff can work (A.R. 23). On inquiry, the vocational expert identified no difference in the work a person with Plaintiff's residual functional capacity could perform if limited to frequent lifting of 20 pounds versus frequent lifting of 25 pounds. See A.R. 72. Moreover, the ALJ found Plaintiff could perform "medium work," i.e., could frequently lift and carry 25 pounds.

rather than total disability" (A.R. 564).³ Dr. Wang's cryptic note is not necessarily inconsistent with the opinion of the medical expert, the opinion of the state agency physician or the findings of the ALJ.

Where, as here, the opinions of non-examining physicians do not contradict "all other evidence in the record," the opinions may furnish substantial evidence to support the administrative decision. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citation omitted); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (opinion of non-examining medical expert "may constitute substantial evidence when it is consistent with other independent evidence in the record") (citation omitted). As the ALJ observed, the findings on examination of Plaintiff were mostly unremarkable, and test results were consistent with the medical expert's opinion that Plaintiff has moderate degenerative disc disease and mild osteoarthritis (A.R. 24-27, 44). See A.R. 382-84 (December, 2011 treatment note for diabetic follow up, reporting no abnormalities on examination); A.R. 343-44 (January, 2012 treatment note for complaints of left shoulder pain, with reported findings on examination of mild tenderness in the left shoulder with full range of motion, but no other abnormalities indicated; diagnosing left shoulder strain and

---

³ Dr. Christopher Kramsch, who treated Plaintiff for diabetes, indicated in August of 2013 that Dr. Kramsch had a disability form but would not fill it out until Plaintiff came in for an appointment (A.R. 557). Dr. Kramsch characterized Plaintiff as an "out of control diabetic that [sic] has not responded to multiple attempts to get him to RTC [return to clinic]" (A.R. 557; see also A.R. 267-70, 288-90, 342-43, 372-75, 455-56, 459-61, 556, 568-70, 572-75, 593-94, 683-84 (notes regarding attempts to get Plaintiff to come in for an appointment)). Records from Plaintiff's next appointment with Dr. Kramsch do not mention disability forms. See A.R. 553-56.

suggesting "heat, rest, massage, meds"); A.R. 336-40 (February, 2012 treatment note for complaints of chest pain, reporting no abnormalities on examination); A.R. 591-92 (August, 2012 treatment note for diabetes follow up with complaints of neck pain and shoulder pain on and off for one year with no relief from heat, Vicodin,[4] or Motrin, reporting findings on examination of tenderness in the neck and shoulders with full range of motion, but no other abnormalities indicated; diagnosing shoulder strain and neck strain and suggesting "heat, rest, massage, meds"); A.R. 293-98 (September, 2012 treatment note for complaints of neck pain, shoulder pain, low back pain radiating to the hip, and right groin "clicks," with reported findings on examination of right groin pain, tenderness to palpation in the neck, but no other abnormalities indicated, suggesting mild "DJD" (degenerative joint disease); assessing arthritis and ordering x-rays before determining appropriate treatment);[5] A.R. 277-80 (October, 2012 treatment note for complaints of ear pain, head pain, neck pain, and back pain, with reported findings on examination of decreased range of motion and tenderness of the left lower back, and "tympanic membrane injected" in the left ear, with no other abnormalities indicated; assessing otitis media and low back pain, and prescribing Ibuprofen);

---

[4] Vicodin is not listed among Plaintiff's medications (A.R. 203, 547-48).

[5] Plaintiff's doctor reportedly would consider treatment with "tylenol, tramadol, muscle relaxors [sic], physical therapy, acupuncture, etc.", depending on the x-ray results (A.R. 298). The x-rays of Plaintiff's lumbar spine showed disc space narrowing and osteophyte formation at L5-S1 consistent with moderate degenerative change (A.R. 275-76). X-rays of Plaintiff's cervical spine showed disc space narrowing and osteophyte formation at C4-C5 and C5-C6 consistent with moderate degenerative change (A.R. 284). X-rays of Plaintiff's hip showed joint space narrowing and osteophyte formation with mild degenerative changes (A.R. 562).

7

A.R. 271-73 (November, 2012 treatment note for complaints of left flank pain reportedly not improving with Ibuprofen, with reported findings on examination of neck pain and back pain, with no other abnormalities indicated; assessing low back pain and prescribing Norco); A.R. 264-66 (March, 2013 treatment note for diabetes follow up with complaints of low back pain and leg pain, reporting no abnormalities on examination); A.R. 565-68 (April, 2013 treatment note for complaints of neck pain and shoulder pain, reporting findings on examination of tenderness to palpation in the neck and right groin pain, but no other abnormalities indicated; assessing arthritis; the note states that Plaintiff presented for pain control, was prescribed Tramadol and Lidocaine ointment (with an indication to consider Norco if Tramadol was ineffective), and that Plaintiff "defer[red] surgical referral"); A.R. 560-62 (June, 2013 treatment note for a physical medicine consultation, reporting finding on examination of right groin pain, but no other abnormalities indicated; assessing arthritis and prescribing Norco); A.R. 554-55 (September, 2013 treatment note for diabetes follow up with complaints of joint pain and edema, reporting no abnormalities on examination); A.R. 553-54 (October, 2013 treatment note for diabetes follow up, reporting no abnormalities on examination).

To the extent the evidence of record is conflicting, the ALJ properly resolved the conflicts. See Treichler v. Commissioner, 775 F.3d 1090, 1098 (9th Cir. 2014) (court "leaves it up to the ALJ" to resolve conflicts and ambiguities in the record); Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (court must uphold the administrative decision when the evidence "is susceptible to more than

8

one rational interpretation").

The vocational expert testified that a person having the residual functional capacity the ALJ found to exist could perform jobs existing in significant numbers (A.R. 72-80). The ALJ properly relied on this testimony in denying disability benefits. See Barker v. Secretary, 882 F.2d 1474, 1478-80 (9th Cir. 1989); Martinez v. Heckler, 807 F.2d 771, 774-75 (9th Cir. 1986).

**II. The ALJ Stated Sufficient Reasons for Finding Plaintiff's Subjective Complaints Less Than Fully Credible.**

Plaintiff challenges the sufficiency of the ALJ's stated reasons for finding Plaintiff's subjective complaints not entirely credible. See Plaintiff's Motion, pp. 1-10. An ALJ's assessment of a claimant's credibility is entitled to "great weight." Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). Where, as here, an ALJ finds that a claimant's medically determinable impairments reasonably could be expected to cause some degree of the alleged symptoms of which the claimant subjectively complains, any discounting of the claimant's complaints must be supported by specific, cogent findings. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010); Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); but see Smolen v. Chater, 80 F.3d 1273, 1282-84 (9th Cir. 1996) (indicating that ALJ must offer "specific, clear and convincing" reasons to reject a claimant's testimony where there is no

evidence of malingering).[6] An ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal citations and quotations omitted); see also Social Security Ruling 96-7p (explaining how to assess a claimant's credibility), superseded, Social Security Ruling 16-3p (eff. March 28, 2016).[7] As discussed below, the ALJ stated sufficient reasons for deeming Plaintiff's subjective complaints less than fully credible.

Plaintiff testified that he stopped working in September of 2009 because he was laid off work (A.R. 55; but see A.R. 201 (Plaintiff reporting in a disability form that he stopped working in September of 2009 due to his medical conditions)). Plaintiff also claimed that his

---

[6] In the absence of an ALJ's reliance on evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard. See, e.g., Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136-37 (9th Cir. 2014); Treichler v. Commissioner, 775 F.3d 1090, 1102 (9th Cir. 2014); Ghanim v. Colvin, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014); Garrison v. Colvin, 759 F.3d 995, 1014-15 & n.18 (9th Cir. 2014); see also Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting earlier cases). In the present case, the ALJ's findings are sufficient under either standard, so the distinction between the two standards (if any) is academic.

[7] Social Security Rulings ("SSRs") are binding on the Administration. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990). The appropriate analysis in the present case would be substantially the same under either SSR. See R.P. v. Colvin, 2016 WL 7042259, at *9 n.7 (E.D. Cal. Dec. 5, 2016) (observing that only the Seventh Circuit has issued a published decision applying Ruling 16-3p retroactively; also stating that Ruling 16-3p "implemented a change in diction rather than substance") (citations omitted); see also Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (suggesting that SSR 16-3p "makes clear what our precedent already required").

pain worsened within six to eight months after he stopped working (A.R. 62). Yet, Plaintiff reported in a Pain Questionnaire that his pain did not begin to affect his activities until November of 2010 (A.R. 226). Plaintiff said that he had physical therapy for approximately a month but otherwise treated with medication and exercise (A.R. 63-65).

Plaintiff claimed that he could not work due to allegedly constant low back pain, arthritis, diabetes, neck pain, hip pain, foot pain, wrist pain, loss of feeling in his hands, and a supposed inability to bend (A.R. 56-58). Plaintiff said that he takes Norco up to two times a day for his pain (though not every day) and that Norco supposedly makes him groggy (A.R. 57, 61-62). Plaintiff claimed that approximately three days a week his symptoms are so bad that he rests and that sometimes just resting hurts also (A.R. 64).

Plaintiff admitted that he walks for exercise, can walk for a quarter of a mile before needing to rest, and can walk for a total of three to four hours in a day (A.R. 58). Plaintiff stated that he: (1) can lift around 10 pounds; (2) has trouble rotating his neck; (3) has
///
///
///
///
///
///

trouble gripping and grasping; and (4) cannot bend, kneel or crouch

11

most of the time (A.R. 59-62).[8]

The ALJ acknowledged Plaintiff's subjective complaints, and stated: "In terms of the claimant's alleged inability to do work. . ., the record does not contain evidence that shows that the claimant is functionally unable to work" (A.R. 23-24). The ALJ discussed the "unremarkable" findings in the medical record, described Plaintiff's treatment as "conservative in nature and not the type one would expect from a disabling condition" (i.e., Plaintiff was not currently being treated with anything other than medication; he had only a very short course of physical therapy; he had not had any pain injections for his back, neck, or hips; and he took no medication for the supposed numbness and tingling in his hands) (A.R. 24-27). On Plaintiff's inconsistent reports, the ALJ also found that Plaintiff had stopped

---

[8] In a Pain Questionnaire dated January 26, 2014, Plaintiff reported that he had been taking Hydrocodone (Norco) twice daily for two years for his pain and that Norco causes no side effects (A.R. 225-27; but see A.R. 547 (medication record indicating Norco was first prescribed in November of 2012)). To help relieve his pain, Plaintiff said he walked for short periods of time and did some leg exercises (A.R. 226). Plaintiff reportedly could walk, do household chores, wash clothes, and wash dishes (A.R. 226). He reportedly could not lift heavy objects, sit for a long time, or walk long distances (A.R. 226). Plaintiff reportedly could walk a half mile, stand for three hours at a time, sit for up to an hour at a time, and drive, do housekeeping, and run errands without assistance (A.R. 227). As noted above, Plaintiff reported that his pain first affected his activities in November of 2010 (A.R. 226).

In an undated "Disability Report - Adult" form, Plaintiff claimed that he stopped working on September 27, 2009, because of his medical conditions (A.R. 200-01). Therein, Plaintiff reported that he could: (1) walk for 30 minutes before needing to rest for up to 10 minutes; (2) stand for approximately 20 minutes before needing to rest for up to 10 minutes; (3) sit for approximately 30 minutes while constantly adjusting his position before getting up or lying down; and (4) pick things up with both hands because he supposedly drops objects when he tries to pick them up with one hand (A.R. 206).

12

working at the time of the alleged onset date because he was laid off and not because of any symptoms related to his impairments (A.R. 27).

An ALJ permissibly may rely on a lack of objective medical evidence to discount a claimant's allegations of disabling symptomology. See Burch v. Barnhart, 400 F.3d 676, 681 (2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his [or her] credibility analysis."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (same); see also Carmickle v. Commissioner, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony"); SSR 16-3p, 2016 WL 1119029, at *4 (Mar. 16, 2016) ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities . . ."). As cited above (and as summarized by the medical expert (A.R. 43-47) and the ALJ (A.R. 24-27)), the medical record contains mostly unremarkable examination
///
///
///
///
///
///

findings.⁹  X-rays of Plaintiff's spine and hips showed some degenerative changes consistent with disc disease and arthritis, which the medical expert and state agency physician considered in assessing Plaintiff's residual functional capacity.  See A.R. 275-76, 284, 471-72, 562 (imaging reports).

An ALJ may also properly discount a claimant's allegations of disabling pain based on a conservative course of treatment.  See, e.g., Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007), cert. denied, 552 U.S. 1141 (2008) (treatment with over-the-counter pain medication is "conservative treatment" sufficient to discredit a claimant's testimony regarding allegedly disabling pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (conservative treatment can suggest a lower level of both pain and functional limitation, justifying adverse credibility determination).  Similarly, an "unexplained or inadequately explained failure to seek treatment [consistent with the alleged severity of subjective complaints]" may also justify discounting a claimant's allegations of disabling pain. See Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (in assessing a claimant's credibility the ALJ may properly rely on "unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment") (citations and internal quotation marks omitted); see also SSR 96-7p at *8 ("[Claimant's]

---

⁹ There were remarkable findings relating to a cancerous tumor, which was discovered in October of 2011 and removed in January and March of 2012 (A.R. 361-72, 380-82, 384-449, 463-69, 599-611, 618-31, 637-77).  This tumor and the treatment therefor do not form any part of Plaintiff's disability claim.  See A.R. 200 (Plaintiff's list of allegedly disabling conditions does not mention anything related to the tumor).

statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints. . . ."); SSR 16-3p at *9 ("Persistent attempts to obtain relief of symptoms, such as increasing dosages or changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent. ¶ In contrast, if the frequency or extent of the treatment sought. . . is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").

The record reflects that Plaintiff sought little treatment for his allegedly disabling impairments. The first reported treatment for any alleged pain occurred in January of 2012 (A.R. 343-44). Plaintiff was not prescribed Norco until November of 2012 (A.R. 273). Plaintiff said he attended only approximately one month of physical therapy, had no injections for his pain, and stopped seeking treatment for his pain other than Norco (which he took only on some days) (A.R. 63-65). There is no indication that Plaintiff sought additional treatment for his pain and, in fact, the record suggests that Plaintiff failed to keep appointments with his treatment providers and deferred any surgery consultation. See, e.g., A.R. 267-70, 288-90, 342-43, 372-75, 455-56, 459-61, 556, 568-70, 572-75, 593-94, 683-84 (notes regarding attempts to get Plaintiff to come in for an appointment); A.R. 568 (Plaintiff reportedly deferring surgery consultation).

There is some doubt whether treatment with Norco should be characterized as "conservative." See Smith v. Colvin, 2015 WL 5882896, at *6 (C.D. Cal. Oct. 7, 2015) (citing Childress v. Colvin, 2014 WL 4629593, at *12 (N.D. Cal. Sept. 16, 2014) ("It is not obvious whether the consistent use of [Norco] (for several years) is 'conservative' or in conflict with Plaintiff's pain testimony."); Aguilar v. Colvin, 2014 WL 3557308, at *8 (C.D. Cal. July 18, 2014) ("there is evidence in the record that Plaintiff has been prescribed narcotic pain medications, . . . It would be difficult to fault Plaintiff for overly conservative treatment when he has been prescribed strong narcotic pain medications")). Under the circumstances of this case, however, the ALJ's characterization of Plaintiff's treatment as "conservative" appears appropriate. Plaintiff's limited course of treatment and his use of Norco during only a portion of the alleged disability period, while refusing a referral for a surgical evaluation, properly undercut the veracity of Plaintiff's testimony and statements. See, e.g., Riebling v. Berryhill, 2018 WL 1896528, at *18 (C.D. Cal. Apr. 18, 2018) (ALJ did not err in characterizing treatment for back pain with narcotic pain medications as more conservative than one would expect for a person who claims disability, where the claimant declined referral to specialized pain management); Wallace v. Berryhill, 2017 WL 3835169, at *3-4 (C.D. Cal. Aug. 31, 2017) (ALJ did not err in finding that the claimant's treatment history was inconsistent with disability where the claimant took Tramadol for two years which helped with her pain); Medel v. Colvin, 2014 WL 6065898, at *8 (C.D. Cal. Nov. 13, 2014) (affirming ALJ's characterization of claimant's treatment as

///

conservative where claimant had been "prescribed only Vicodin and Tylenol for his allegedly debilitating low-back pain").

Furthermore, assuming, <u>arguendo</u>, that the ALJ's partial reliance on Plaintiff's "conservative" treatment was improper, the Court nevertheless upholds the ALJ's determination. Under <u>Carmickle v. Commissioner</u>, 533 F.3d at 1163, the infirmity of one or two supporting reasons for an ALJ's determination regarding subjective symptoms does not require overturning the determination if independently valid supporting reasons remain. Here, the lack of supporting objective medical evidence and the fact that Plaintiff inconsistently stated that he stopped working because of his medical conditions and that he stopped working because he had been laid off, are independently valid reasons for discounting Plaintiff's testimony and statements. As to the latter, a claimant's inconsistencies, as well as an admission of stopping work for reasons other than the claimant's conditions, properly may impugn the accuracy of a claimant's testimony and statements. See <u>Brackett v. Comm'r of Soc. Sec. Admin.</u>, 468 Fed. App'x 754, 755 (9th Cir. 2012) (ALJ permissibly discounted claimant's subjective pain testimony partly because claimant stopped working only when he was laid off due to a plant closure); <u>Burch v. Barnhart</u>, 400 F.3d 676, 680 (9th Cir. 2005) ("In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering . . . inconsistencies in claimant's testimony"); <u>Bruton v. Massanari</u>, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ did not err in discrediting claimant's subjective complaints where claimant "stated at the administrative hearing and to at least one of his doctors that he left his job because he was laid off, rather than because he was

injured"); Drouin v. Sullivan, 966 F.2d 1255, 1256, 1258 (9th Cir. 1992) (ALJ did not err in rejecting claimant's credibility partly on the basis of the fact that claimant was laid off for business reasons, not impairments).

Accordingly, the ALJ stated sufficient reasons to allow this Court to conclude that the Administration discounted Plaintiff's testimony and statements on permissible grounds. See Moisa v. Barnhart, 367 F.3d at 885. The Court therefore defers to the Administration's determination. See Lasich v. Astrue, 252 Fed. App'x 823, 825 (9th Cir. 2007) (court will defer to Administration's credibility determination when the proper process is used and proper reasons for the decision are provided); accord Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1464 (9h Cir. 1995).[10]

///
///
///
///
///
///
///
///

---

[10] The Court should not and does not determine de novo the accuracy of Plaintiff's testimony and statements concerning his subjective symptomatology. Some evidence suggests that his testimony and statements may be accurate. However, it is for the Administration, and not this Court, to evaluate the accuracy of Plaintiff's testimony and statements regarding the intensity and persistence of Plaintiff's subjective symptomatology. See Magallanes v. Bowen, 881 F.2d 747, 750, 755-56 (9th Cir. 1989).

**CONCLUSION**

For all of the foregoing reasons, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: June 8, 2018

/s/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE